1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN JOSE DIVISION

12

**United States District Court**

| | | |
|---|---|---|
| TECHNOLOGY & INTELLECTUAL PROPERTY STRATEGIES GROUP PC, a California Professional Corporation, | ) ) ) ) | Case No.: 12-CV-03163-LHK |
| Plaintiff, | ) ) | ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL |
| v. | ) ) | ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM |
| INSPERITY, INC., a Texas Corporation,  and DOES 1–10, | ) ) ) | |
| Defendants. | ) ) ) ) | |

13

14

15

16

17

18

19

20

21     Plaintiff Technology & Intellectual Property Strategies Group PC ("Plaintiff" or "TIPS

22 Group") brings this action against Insperity, Inc. and Does 1 through 10 alleging: (1) false

23 advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1117(a); (2) fraud/fraud in the

24 inducement; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) breach of

25 promise (promissory estoppel); (6) breach of contract; (7) violation of California Business &

26 Professions Code § 17200, *et seq.*; (8) breach of fiduciary duty; (9) breach of covenant of good

27 faith and fair dealing; (10) tortious breach of contract (bad faith); and (11) bad faith retaliation.

28

1

United States District Court

Plaintiff's allegations stem from a contractual dispute with Defendant over wage claims filed against Plaintiff by Basil Fthenakis, a former partner at TIPS Group.  For the reasons discussed below, the Court hereby GRANTS the Motion to Intervene filed by Insperity PEO Services, L.P. ("Insperity PEO").  In addition, the Court GRANTS the Motion for Stay and to Compel Arbitration filed by Defendant Insperity, Inc. and Intervenor Insperity PEO (collectively "Defendants").  Finally, the Court DENIES Plaintiff's Motion to Dismiss the Counterclaim filed by Insperity PEO.

## I.      BACKGROUND

### A.  Factual Allegations

Plaintiff, a professional corporation engaged in the practice of technology law, brings suit against Insperity, Inc., a professional employer organization ("PEO") which contracts with small and medium-sized businesses to provide services related to human resources.  ECF No. 1 ("Compl.") ¶¶ 1, 5–6.  According to Plaintiff, "Insperity operates as a co-employer with the client business, managing payroll and benefits for the client's employees, and handling employment-related regulatory issues."  Compl. ¶7.

Plaintiff alleges that, in or around April 12, 2008, it responded to an Insperity advertisement—then known as "Administaff"—for PEO services with a request for additional information.  Compl. ¶12 (citing ECF No. 1-1, Exh. B, an advertisement by Administaff).[1]  A representative responded to Plaintiff's request and scheduled a meeting at Plaintiff's office.  Compl. ¶13.  According to Plaintiff, a large portion of the sales presentation involved representations that Insperity's expertise in human resources would reduce Plaintiff's risk of employment-related administrative and legal liabilities and permit TIPS Group to be indemnified for up to one million dollars for co-employee lawsuits.  Compl. ¶14.

#### 1.  Client Service Agreement

---

[1]  As explained in a declaration submitted by Andrew Ramzel, the managing counsel for Insperity, Inc. and its subsidiaries, "Insperity, Inc. operated under the name Administaff, Inc. until it adopted its current name on or about March 3, 2011."  ECF No. 18-4, Decl. Andrew Ramzel ("Ramzel Decl.") ¶3.

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

1    On June 17, 2008, Plaintiff TIPS Group signed a Client Service Agreement ("CSA or

2    "Agreement") with Administaff Companies II, L.P. ("Administaff II")—a subsidiary of Insperity,

3    Inc./Administaff that changed its name to Insperity PEO Services L.P. on March 3, 2011.  Compl.

4    ¶16, *see* ECF No. 1-1, Exh. C (Adminstaff II & TIPS Group's Client Service Agreement); *see also*

5    Ramzel Decl. ¶4 ("Insperity, Inc. is the parent company of Insperity PEO Services, L.P., which

6    operated under the name Administaff Companies II, L.P. until adopting its current name on or

7    about March 3, 2011.").

8    The CSA provides, in part, that: "Administaff hereby agrees to indemnify, defend, and hold

9    Client [TIPS Group] harmless from and against any and all liability, expenses (including cost of

10   investigations, court costs and reasonable attorney's fees) and claims for damages of any nature

11   whatsoever . . . which Client may incur, suffer, become liable for, or which may be asserted or be

12   claimed against Client as a result of Administaff: (a) failing to pay when due wages to Staff . . . ."

13   CSA § 10.1 ("Insperity Indemnity").[2]  The CSA also includes an explicit arbitration agreement

14   which provides as follows:

15           Except for unpaid invoices owed by Client to Administaff, Administaff and Client
16           agree and stipulate that all claims, disputes, and other matters in question between
             Administaff and Client arising out of, or relating to this Agreement or the breach
17           thereof, will be decided by arbitration in accordance with the Federal Arbitration
             Act (9 U.S.C. 10 and 11) and the Commercial Arbitration Rules of the American
18           Arbitration Association subject to the limitations of this Article XII.  This
             Agreement to so arbitrate and any other agreement or consent to arbitrate entered
19           into in accordance herewith  as provided in this Article XII will be specifically
             enforceable under the prevailing law of any court having jurisdiction.
20

21   CSA §12.1.  Finally, in Section 13.3, the CSA permits an award of costs, including attorney's fees,

22   court costs, and related expenses, to the prevailing party in any enforcement action arising with

23   respect to the CSA.  After signing the CSA, Plaintiff alleges that it relied upon the advertised

24

25

26           [2]  The CSA also states that, for a variety of reasons, "Client hereby agrees to indemnify,
27   defend and hold Administaff, Administaff, Inc. and all subsidiaries of or companies affiliated with
     Administaff, Inc . . . harmless from and against any and all liability, or expense. . . ."  CSA § 103.
28

3

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

1   expertise of Insperity to indemnify Plaintiff against administrative and legal actions by persons in

2   its employ.  Compl. ¶17.

3                    **2.   Fthenakis Wage Claim**

4          On or about February 1, 2011, Basil Fthenakis, a partner at Plaintiff TIPS Group, informed

5   Plaintiff of his intent to terminate employment.  Compl. ¶20.  Pursuant to directions from a

6   "payroll specialist" who presumably worked for Administaff II, Fthenakis then filled out the

7   "Administaff Employee Termination" forms.  The Termination Agreement signed by Fthenakis

8   instructed that his "final wages" were to be "direct deposited" into his bank account.  Compl. ¶22.

9   The day after Fthenakis officially terminated his employment with TIPS Group, Fthenakis

10  complained that he had not been paid his final wages when due.  Compl. ¶23.  Fthenakis's

11  complaints regarding his wages "continued and escalated," resulting in Fthenakis filing a claim

12  with the California Labor Commissioner, alleging violations of the California Labor Code, and

13  subsequently filing a federal lawsuit.  Compl. ¶¶24, 30, 34.

14         On or about February 16, 2012, Insperity emailed Plaintiff stating that it "has elected to

15  exercise its option to terminate the Agreement [CSA] effective 11:59 p.m. on March 19, 2012.

16  After such date, you assume full responsibility as employer for the employees."  Compl. ¶49.

17         On or about March 22, 2012, Plaintiff agreed to pay Fthenakis $125,000.00 as part of a

18  settlement agreement, "[i]n order to mitigate any further adverse economic harm to Plaintiff" by

19  proceeding with trial "with no assistance or support from Insperity in defending against the

20  Ftehnakis claim."  Compl. ¶51.  In addition to the settlement fee paid to Fthenakis, Plaintiff alleges

21  that it incurred costs in excess of $200,000.00 in legal expenses associated with Fthenakis's wage

22  claim.  *Id.*

23                    **B.  Procedural History**

24         Plaintiff commenced this action on June 19, 2012, in part to recover from Defendant its

25  expenses related to Fthenakis's wage claims.  ECF No. 1.  On or about July 30, 2012, Defendant

26  Insperity, Inc. filed an answer to Plaintiff's Complaint and Counterclaim.  ECF No. 6.  Then, on

27  August 16, 2012, Defendant filed its Answer to the Complaint and Intervening Plaintiff Insperity

28

United States District Court

4

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

PEO Services, LP's First Amended Counterclaims and Application to Compel Arbitration, alleging that Plaintiff/Counter Defendant TIPS Group breached the CSA by failing to submit its claims to arbitration and requesting that the Court enforce Insperity's right to arbitration of TIPS Group's claims.  ECF No. 15 ("Am. Countercl.").

On or about August 17, 2012, Insperity PEO filed a Motion to Intervene alleging that it, rather than Insperity, Inc., is the proper counter-party to the agreement giving rise to Plaintiff's suit.  ECF No. 18 ("Mot. to Intervene").  Simultaneously with this filing, Defendant Insperity, Inc. and Intervenor Insperity PEO filed a Motion for Stay and to Compel Arbitration.  ECF No. 19 ("Mot. to Compel Arb.").  On August 31, 2012, Plaintiff filed an opposition to Insperity PEO's Motion to Intervene, *see* ECF No. 23 ("Opp'n to Mot. to Intervene"), and an opposition to Defendants' Motion for Stay and to Compel Arbitration, *see* ECF No. 24 ("Opp'n to Mot. to Compel Arb.").  Intervenor then filed a reply in support of its Motion to Intervene on September 7, 2012, *see* ECF No. 27 ("Reply Supp. Mot. to Intervene"), and Defendants filed a reply in support of their Motion for Stay and to Compel Arbitration on the same day, *see* ECF No. 26 ("Reply Supp. Mot. to Compel Arb.").

On or about September 6, 2012, Plaintiff filed a Motion to Dismiss Insperity PEO's Counterclaim.  ECF No. 25 ("Mot. to Dismiss").  Intervenor filed an opposition to Plaintiff's Motion to Dismiss, ECF No. 28 ("Opp'n to Mot. to Dismiss"), to which Plaintiff filed a reply, ECF No. 29 ("Reply Supp. Mot. to Dismiss").  Intervenor then filed a Motion for Leave to File Surreply to Plaintiff's Reply in Support of its Motion to Dismiss, objecting to new evidence allegedly included by Plaintiff in its reply.  *See* ECF No. 30 ("Surreply").  In response, Plaintiff filed an opposition, ECF No. 38 ("Opp'n to Surreply"), and Intervenor filed another reply in support of its surreply, ECF No. 42 ("Reply Supp. Surreply").

## II.      MOTION TO INTERVENE

Insperity PEO seeks to intervene in this lawsuit claiming that it, rather than Insperity, Inc., is the proper counter-party as Plaintiff's Complaint is based on alleged acts or omissions by Insperity PEO in its performance of the CSA.  *See* Mot. to Intervene at 3.  Plaintiff characterizes

5

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

Defendant Insperity, Inc.'s attempt to replace itself with Insperity PEO as part of "an elaborate corporate shell game," and argues that Insperity PEO should neither be allowed to intervene in this action as of right nor subject to the Court's permission.  Opp'n to Mot. to Intervene at 1.  The Court finds that Insperity PEO is entitled to intervene "as of right" pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Accordingly, the Court GRANTS Insperity PEO's Motion to Intervene.

### A.   Legal Standard

Federal Rule of Civil Procedure 24(a)(2) requires that a court permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  An applicant seeking to intervene "as of right" pursuant to Rule 24(a)(2) must satisfy four requirements: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."  *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (internal quotation marks and citations omitted); *accord United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

"[A]lthough an applicant seeking to intervene has the burden to show that these four elements are met, 'the requirements are broadly interpreted in favor of intervention.'"  *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (quoting *Alisal Water Corp.*, 370 F.3d at 919); *see also SW Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors.").  Furthermore, "[i]n determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations."  *Alisal Water Corp.*, 370 F.3d at 919; *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

United States District Court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Alternatively, the Court has discretion to grant an applicant's request for permissive intervention.  Under Federal Rule of Civil Procedure 24(b), "on a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Permissive intervention under Rule 24(b) requires an applicant to "prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction."  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  If these threshold requirements are met, the court has broad discretion to permit or deny intervention under Rule 24(b).  *See Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).  In exercising its discretion, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

### B. Analysis

#### 1. Timeliness of Motion to Intervene

Insperity PEO argues that its Motion to Intervene is timely as it was "filed less than two months after the filing of this suit, before the Court's case management conference, and simultaneously with Insperity and Defendant Insperity, Inc.'s Motion for Stay and to Compel Arbitration of TIPS Group's claims."  Mot. to Intervene at 5.  Plaintiff argues that Insperity PEO's motion is premature, as "[t]he proper procedure for Insperity, Inc. would have been to file a motion under FRCP 12(b)(6) that it was not the proper party as to *any* of the claims made by Plaintiff in the Complaint."  Opp'n to Mot. to Intervene at 6.

In determining timeliness pursuant to Rule 24, a court should consider: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Alisal Water Corp.*, 370 F.3d at 921 (internal quotation marks and citation omitted).  "Timeliness is a flexible concept; its determination is left to the district court's discretion." *Id.*  (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981) (per curiam)).

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

The Court is not persuaded by Plaintiff's argument that Insperity PEO's Motion to Intervene is premature.  Not only does Plaintiff fail to cite any authority supporting its assertion that Insperity PEO should have waited until Insperity Inc. filed a motion to dismiss in order to intervene, such a course of action would appear to conflict with Ninth Circuit precedent indicating that unnecessary delay is a factor weighing *against* a finding of timeliness.  As the Ninth Circuit sated in *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, "[w]hile the length of time that has passed since a suit was filed is not, in and of itself, determinative of timeliness, [a] party seeking to intervene must act as soon as he knows *or has reason to know* that his interests might be adversely affected by the outcome of the litigation."  309 F.3d 1113, 1121 (9th Cir. 2002) (emphasis in original, citation and internal quotation marks omitted); *see, e.g.*, *Prete*, 438 F.3d at 954 (finding timeliness where "intervenor-defendants brought the motion to intervene only six days after plaintiffs brought the action."); *cf. Cal. Dep'. of Toxic Substances Control,* 309 F.3d at 1119 (concluding that district court did not abuse its discretion in denying motion to intervene in a long-litigated environmental action where intervention would, among other things, "unnecessarily prolong the litigation, threaten the parties' settlement, and further delay cleanup and development of the [Landfill]") (alteration in the original)).

Here, Insperity PEO satisfies all of the requirements for timeliness.  First, Insperity PEO sought to intervene toward the very beginning of this lawsuit.  Consequently, the timing of Insperity PEO's motion will not prolong this litigation unnecessarily; no case schedule has even been set.  Second, Insperity PEO's intervention in this suit will not delay realization of a right to which Plaintiff has proved that it is otherwise entitled.  *Cf. Air Cal.*, 799 F.2d at 539 (noting that, when evaluating prejudice to other parties, "courts have emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed.") (citing *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 658 (9th Cir. 1978) (per curiam)).  Finally, Insperity PEO did not engage in unnecessary delay when filing this motion.  Accordingly, the Court finds that Insperity PEO's Motion to Intervene is timely.

## 2.  Significantly Protectable Interest

United States District Court

1   The more challenging question raised by this motion is whether Insperity PEO has a

2   "significantly protectable" interest warranting intervention in this case.   In order to demonstrate a

3   "significantly protectable" interest, "an applicant must establish that the interest is protectable

4   under some law and that there is a relationship between the legally protected interest and the claims

5   at issue." *Citizens for Balanced Use*, 647 F.3d at 897.  "Whether an applicant for intervention as of

6   right demonstrates sufficient interest in an action is a 'practical, threshold inquiry.'" *Id.* (quoting

7   *N.W. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)).

8   Plaintiff disputes that Insperity PEO is the proper defendant in this case.  According to

9   Plaintiff, TIPS Group signed the CSA with Administaff II and "was not aware of the existence of

10   Insperity PEO until the filing of its motions to intervene and to stay and to compel arbitration."

11   Opp'n to Mot. to Intervene at 1, 4.  Therefore, because Insperity PEO was not the original party

12   that entered into the CSA with Plaintiff, Plaintiff does not even have an agreement with Insperity

13   PEO and Insperity PEO should not be allowed to intervene in this action.

14   Plaintiff further alleges that the CSA with Administaff II is defective as Administaff II

15   never notified TIPS Group that it was going "to substitute Insperity PEO" in its place, in violation

16   of Section 13.5 of the CSA.  Opp'n to Mot. to Intervene at 5 (citing CSA § 13.5 for the proposition

17   that "[n]o amendment or modification to this Agreement . . . shall be valid unless in writing and

18   signed by both parties hereto").  According to Plaintiff, because Administaff II did not comply with

19   the provisions of the CSA requiring any "amendment or modification" to be agreed to by both

20   parties in writing, the CSA is defective.

21   The Court does not agree with Plaintiff that Insperity PEO is a new, successor entity to

22   Administaff Companies II, L.P.  None of the parties in this suit dispute that Plaintiff and

23   Administaff II signed the CSA originally.  *See* ECF No. 18-3 ("This Client Service Agreement . . .

24   is between Administaff Companies II, L.P.  . . . and Technology & Intellectual Property Strategies

25   Group PC . . . .").  The Amended Certificate of Registration certified by the Secretary of State of

26   the State of California demonstrates that Administaff II formally changed its name to Insperity

27   PEO Services, L.P. on March 3, 2011.  *See* ECF No. 27-2 (Am. Cert. Reg.); *see also* Ramzel Decl.

28

9

¶ 4 (stating that Insperity PEO "operated under the name Administaff Companies II, L.P. until adopting its current name on or about March 3, 2011").  As noted by Kristi Herring, Assistant General Counsel for Insperity, Inc., "[b]ecause Administaff Companies II, L.P. and Insperity PEO Services, L.P. are simply two names applied to the same entity, its March 3, 2011 name change did not in any way alter or amend either the terms of the CSA or the parties thereto."  ECF No. 27-1, Decl. of Kristi Herring ("Herring Decl.") ¶5.  As such, Insperity PEO's name change does not amount to an "amendment or modification" to the CSA, and Plaintiff fails to cite any authority to the contrary.  Moreover, when notifying Plaintiff about the name change, Insperity made clear that the name change would not result in any changes to the existing CSA.  *See* ECF No. 23-1, Exh. 2.  As Insperity PEO is the same entity with which Plaintiff entered into the CSA, Plaintiff has no basis for contesting the validity of the CSA or that its proper counterparty to the CSA is Insperity PEO.

Given that Insperity PEO is a party to the CSA, the Court finds that it has established a sufficient interest in enforcing the rights provided within the Agreement.  As noted by Insperity PEO, TIPS Group seeks damages arising from the performance of the CSA.  Therefore, Insperity PEO has a significant protectable interest in appearing in this lawsuit "to assure that the CSA is correctly interpreted and applied, [and] to rebut TIPS Group's factual allegations."  Mot. to Intervene at 5.  In addition, the CSA includes a mandatory arbitration provision directing the parties to arbitrate all claims "arising out of, or relating to" the CSA.  *See* CSA § 12.1; *see infra* Part III (analyzing the application of the arbitration agreement to this case).  Insperity PEO seeks to assert its right to enforcement of this arbitration provision, and to potentially avail itself of the CSA provision that allows a prevailing party to recover attorney's fees and expenses.  *See* CSA § 13.3.  Both of these provisions constitute legally protected interests relating to the transaction that is the subject of this action.  Therefore, Insperity PEO has a significant protectable interest that supports intervention as of right.

### 3.  Practical Impairment

Ordinarily, once an applicant has established a significant protectable interest in the action, courts readily find that disposition of the case may, as a practical matter, impair or impede the applicant's ability to protect that interest.  *See Citizens for Balanced Use*, 647 F.3d at 898; *see also California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").  This case is no exception.  If Plaintiff prevails in this lawsuit without Insperity PEO, Insperity PEO will, as a practical matter, be denied the right to enforce the provisions in the CSA requiring mandatory arbitration and providing for costs.  *See* Fed. R. Civ. P. 24 Advisory Committee's note ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").  Therefore, the Court finds that Insperity PEO satisfies this requirement.

### 4.  Adequacy of Representation

Finally, Plaintiff contests Insperity PEO's intervention in this lawsuit because Insperity, Inc. fully owns Insperity PEO, and is therefore able to protect the interests of its subsidiary.  Opp'n to Mot. to Intervene at 7.

In evaluating the adequacy of representation, courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (internal quotation marks and citations omitted).  "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086).  "If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises," which can be rebutted by "a 'compelling showing' of inadequacy of representation." *Id.* (internal citations omitted).

11

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

United States District Court

Given that Insperity PEO is a wholly-owned subsidiary of Insperity, Inc., there is reason to believe that Insperity PEO and Insperity, Inc.'s objectives align.  In this case, those objectives appear to involve enforcing the terms of the CSA and compelling arbitration.

However, TIPS Group contends that Insperity, Inc. has no right to enforce the arbitration provisions of the CSA because Insperity, Inc. is not a party to the agreement.  *See* Opp'n to Mot. to Compel Arb. at 6 (arguing that Insperity, Inc. must be excluded from claiming any right under the CSA because "'Insperity, Inc. is not a party to the CSA and has no contractual or other relationship with TIPS Group.'") (quoting ECF No. 18 at 5); *see also* Opp'n to Mot. to Compel Arb. at 7 ("If Insperity, Inc. is not under the CSA contract, it is clearly inappropriate to try to force claims against it, including Federal claims . . . into an arbitration forum.").  Generally, the "contractual right [to compel arbitration] may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993).  Therefore, assuming that Plaintiff is correct that Insperity, Inc. cannot enforce the terms of the CSA because it is not a party to the contract, Insperity PEO will be deprived of the right to resolve Plaintiff's claims through arbitration if it is not permitted to intervene in this case. Therefore, it is not clear that Insperity, Inc. can protect the interests of Insperity PEO sufficiently. *See Prete*, 438 F.3d at 954 (noting that "the requirements for intervention are broadly interpreted in favor of intervention.") (internal quotation marks and citation omitted);  *id.* at 956 ("The burden of showing inadequacy of representation is minimal and 'is satisfied if the applicant shows that representation of its interests 'may be' inadequate . . . .'") (citation omitted).

Accordingly, the Court finds that Insperity PEO has satisfied the requirements of Rule 24(a)(2) and should be entitled to intervene in this case as a matter of right.  In light of this finding, the Court need not consider whether Insperity PEO should be allowed to intervene on a permissive basis pursuant to Rule 24(b).  Insperity PEO's Motion to Intervene is GRANTED.

### III.    Motion for Stay and to Compel Arbitration

Defendant Insperity, Inc. and intervenor Insperity, PEO request the Court to compel Plaintiff to arbitration, and to stay this case in its entirety pending the conclusion of that arbitration,

12

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 & 4.  According to Defendants, the CSA at issue in this case includes a broad, mandatory arbitration clause requiring TIPS Group to assert all claims "arising out of or relating to" the CSA before the American Arbitration Association.  Thus, Defendants allege that Plaintiff's claims cannot be resolved on the merits until they are raised in an appropriate forum.  The Court finds that the CSA includes a valid agreement to arbitrate and covers the dispute at issue in this case.  Consequently, the Court hereby GRANTS the Motion For Stay and to Compel Arbitration.

### A.  Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, *et seq.*, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Pursuant to the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts are required to enforce arbitration agreements according to their terms.  *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010).  "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  *Id.* (quoting *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

The FAA sets forth procedures by which the federal courts must implement the Arbitration Act. Pursuant to Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'"  *Rent-A-Center, West, Inc.*, 130 S.Ct. at 2776 (quoting 9 U.S.C. § 3).  In addition, pursuant to Section 4 of the FAA, "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'"  *Id.* (quoting 9 U.S.C. § 4).

A court is required to direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that the agreement encompasses the dispute at issue.  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *see* 9 U.S.C. § 4 ("If a court

13

United States District Court

. . . [is] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

### B. Analysis

#### 1. Validity of the Arbitration Agreement

Article XII of the CSA contains an explicit arbitration agreement stating that "Administaff and Client [TIPS Group] agree and stipulate that all claims, disputes, and other matters in question between Administaff and Client arising out of, or relating to this Agreement or the breach thereof, will be decided by arbitration in accordance with the Federal Arbitration Act (9 U.S.C. 10 and 11) and the Commercial Arbitration Rules of the American Arbitration Association subject to the limitations of this Article XII." CSA §12.1. Based on this provision of the CSA, Defendants argue that "there can be no legitimate dispute that the parties have entered into a binding, mandatory arbitration agreement [as] Article XII of the CSA creates broad, mandatory rights to arbitration." Mot. to Compel Arb. at 10.

Plaintiff's primary arguments against directing the parties to proceed to arbitration, as required by 9 U.S.C. § 4, are that: (1) Plaintiff does not have an agreement with Insperity PEO because "Administaff II never notified TIPS Group at its designated address that there was to be an amendment or modification to the CSA to substitute Insperity PEO for itself," Opp'n to Mot. to Compel Arb. at 4; and (2) the CSA between TIPS Group and Administaff II is void because Administaff "secretly attempted to change the CSA without adhering to the provisions of Paragraph 13.5 that requires notice and a written agreement executed by both parties to make *any* change, let alone a change to one of the parties," Opp'n to Mot. to Compel Arb. at 5, and (3) "the express terms of Paragraph 13.1 of the CSA specifically exclude both of the Insperity Parties from

14

1   claiming any right under the CSA, including, but not limited to, any right to enforce the arbitration

2   clause," Opp'n to Mot. to Compel Arb. at 6.

3        For the reasons discussed previously, the Court is not persuaded by Plaintiff's arguments

4   that TIPS Group does not have an agreement with Insperity PEO. *See supra* Part II.B.2.

5   Administaff II changed its name to Insperity PEO on March 3, 2011.  ECF No. 27-2.  This name

6   change did not result in any changes or modifications to the substance of the contract.  Likewise,

7   this name change did not result in a change in the actual parties to the agreement.  Accordingly,

8   Plaintiff's arguments that the CSA is defective and/or void because Insperity PEO replaced

9   Administaff II without seeking prior notification and approval from Plaintiff are meritless.[3]

10        Plaintiff further contends that the Federal Arbitration Act does not apply to these parties

11   because "[t]he parties and alleged parties to this action are neither involved in a maritime

12   transaction or a transaction in commerce" as defined by Section 2 of the FAA.  Opp'n to Mot. to

13   Compel Arb. at 6 (noting that the FAA applies to "a written provision in any maritime transaction

14   or a contract evidencing a transaction involving commerce . . . ." (citing 9 U.S.C. § 2)).  There is no

15   dispute that this case does not involve a maritime transaction.  The only question, then, is whether

16   the parties to the CSA were involved in "a contract evidencing a transaction involving commerce."

17   The Supreme Court considered the breadth of Section 2 of the FAA in *Allied-Bruce Terminex Cos.*

18   *v. Dobson*, 513 U.S. 265 (1995), a case involving a termite control company that sought to compel

19   arbitration and stay legal proceedings after homeowners filed suit in state court.  In analyzing the

20   reach of Section 2, the Court concluded that the words "'involving commerce' . . . are broader than

21   the often-found words of art 'in commerce.'" *Id.* at 273.  Consequently, the Court held that the

22   phrase "involving commerce" is "the functional equivalent of 'affecting [commerce]," which

---

23       [3]  Plaintiff's argument that "none of the provisions of the CSA can be invoked by

24   Administaff II for any purposes for actions which took place prior to April 17, 2009, including the
    false advertising and fraudulent inducement of Insperity, Inc. which happened at least 9 months

25   earlier," Opp'n to Mot. to Compel Arb. at 5, is also unconvincing.  As discussed *infra* in Part
    III.B.2., Plaintiff's false advertising and fraudulent inducement claims clearly "relate to" the

26   provisions of the CSA.  As there is no reason to believe, based on the broad arbitration clause, that
    the parties did not intend for these claims to be arbitrated, the Court does not find Plaintiff's

27   argument to be a basis for concluding that the arbitration agreement is invalid.

28

"normally signals Congress' intent to exercise its Commerce Clause powers to the full." *Id.* at 273–74.  The Court also considered the language "evidencing a transaction" involving commerce, and determined that the phrase should be interpreted broadly, stating that the transaction must involve interstate commerce, "even if the parties did not contemplate an interstate commerce connection." *Id.* at 281.  Here, the CSA constitutes an agreement between a California professional corporation (Plaintiff) and a Delaware limited partnership based in Texas (Insperity PEO) to "provide personnel management services to Client through an allocation of responsibilities."  CSA, Art.I.  As the personnel services provided involved transactions across state lines, the CSA appears to consist of "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.

Finally, Plaintiff disputes the applicability of the arbitration clause to this case because, under Section 1 of the FAA, the Arbitration Act specifically excludes its application to "contracts of employment of seamen, railroad employees, *or any other classes of workers engaged in foreign or interstate commerce*."  9 U.S.C. § 1 (emphasis added).  Plaintiff's argument appears to be that the arbitration agreement does not apply to this case because the CSA involved a class of workers engaged in interstate commerce.  However, the Supreme Court explicitly rejected Plaintiff's Section 1 argument in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), an employment discrimination action in which Circuit City sought to compel arbitration based on an employment application that required all employment disputes to be settled by arbitration.  In rejecting the Ninth Circuit's broad interpretation of Section 1 to exempt all employment contracts from the FAA's reach, the Supreme Court clarified that, "Section 1 exempts from the FAA only contracts of employment *of transportation workers*."  *Id.* at 119 (emphasis added).  Therefore, because this case does not involve employment contracts for classes of transportation workers, Plaintiff is not exempted from the terms of the CSA on this basis.

Accordingly, the Court finds that the CSA includes a valid arbitration agreement to which both parties agreed when signing the CSA.

## 2.  Scope of the Arbitration Agreement

16

Having determined that the arbitration agreement included within the CSA is valid, the only question left to resolve is whether the arbitration agreement encompasses the disputes at issue in this case. In light of "the strong federal policy favoring arbitral dispute resolution," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999), the Court concludes that the agreement encompasses the disputes at issue in this case.

The plain language of the CSA indicates that, when signing the agreement, the parties intended to agree to a broad arbitration provision. Specifically, the CSA states that "all claims, disputes, and other matters in question between Administaff and Client *arising out of, or relating to* this Agreement or the breach thereof, will be decided by arbitration." CSA §12.1 (emphasis added). As the Ninth Circuit noted in *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914 (9th Cir. 2011), "when parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement." *Id.* at 922; *cf. Simula, Inc.*, 175 F.3d at 721 (interpreting the breadth of an arbitration clause and concluding that "the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.").

In this case, all of Plaintiff's claims "arise out of" or "relate to" the CSA. *See e.g.*, Compl. ¶76 (alleging, in Count 3, intentional misrepresentation because Plaintiff "justifiably relied on the misrepresentations contained in the . . . CSA respecting the Insperity Indemnity and the Employee Termination Agreement . . . ."); Compl. ¶84 (alleging, in Count 4, negligent misrepresentation based, in part, on the CSA); Compl. ¶91 (alleging, in Count 5, breach of promise because Plaintiff relied on the "express promises by Insperity under the CSA"); Compl. ¶98 (alleging, in Count 6, breach of contract and stating that, "[a]s a result of Insperity's breach of the CSA, Plaintiff has incurred in excess of $200,000.00 in legal expenses and $125,000.00 in settlement of the Fthenakis Wages Claim."); Compl. ¶¶ 106, 117 (alleging, in Counts 8 and 10, that Insperity breached its duties arising from the co-employer relationship created by the CSA); Compl. ¶111 (alleging, in Count 9, that "Insperity tortuously breached the covenant of good faith and fair dealing implied by

the CSA"); Compl. ¶127 (alleging, in Count 11, that "Plaintiff has suffered economic losses as a proximate result of the bad faith retaliatory termination of the CSA by Inisperity . . .").

Nevertheless, Plaintiff asserts that its claims against Insperity are not covered by the CSA because it alleges a false advertising claim pursuant to federal statutory law—Section 43(a) of the Lanham Act—and a fraudulent business claim pursuant to California Business and Professions Code §§ 17200, *et seq*. The mere fact that Plaintiff alleges statutory claims does not, however, remove this case from the purview of the CSA's arbitration agreement. As the Supreme Court held in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), "as with any other contract, the parties' intentions [when entering into an arbitration agreement] control . . . There is no reason to depart from these guidelines where a party bound by an arbitration agreement raises claims founded on statutory rights." *Id*. at 626. Indeed, the Court emphasized that parties' "intentions are generously construed as to issues of arbitrability" and "the [Arbitration] Act itself provides no basis for disfavoring agreements to arbitrate statutory claims." *Id*. at 626–27; *see also Simon v. Pfizer*, 398 F.3d 765, 776 (6th Cir. 2005) (noting that "a party cannot avoid arbitration simply by renaming its claims so that they appear facially outside the scope of the arbitration agreement."). As both Plaintiff's Lanham Act claim and California statutory claim relate to the CSA, there is no basis for concluding that these claims are not covered by the FAA as well. *See generally Simula*, 175 F.3d at 724 ("Courts have routinely held that claims falling under the Lanham Act are arbitrable."). For instance, Plaintiff's Lanham Act claim (Count 1) and Plaintiff's claim pursuant to California Business and Professions Code § 17200 (Count 7) allege that Insperity's advertising, collateral, and sales pitches were false, unfair, deceptive, or misleading. Compl. ¶¶ 59, 101. However, determining whether Insperity's pre-contractual representations were false, unfair, deceptive, or misleading necessarily requires interpreting Insperity PEO's performance and conduct pursuant to the CSA. Therefore, both of these claims "relate[] to" the CSA, and are therefore arbitrable.

Finally, Plaintiff argues that, at the very least, its second claim based on fraud and fraud in the inducement should not be subject to arbitration. Opp'n to Mot. to Compel Arb. at 8. While

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

arbitration agreements are supposed to be construed on an equal footing with other contracts, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Associates, Inc.*, 517 U.S. at 687.

Pursuant to the FAA, however, a claim of fraud must be reviewed by arbitrators unless a party challenges a specific arbitration provision as fraudulent.  As the Supreme Court explained in *Rent-a-Center, West, Inc*, "there are two types of validity challenges under § 2: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'"  130. S.Ct. at 2778 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).  In a line of cases dating back to 1967, the Supreme Court has made clear that "only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable."  *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Buckeye*, 546 U.S. at 444–46; *Preston v. Ferrer,* 552 U.S. 346, 353–354 (2008)).  The rationale behind this division is that arbitration agreements are severable from the remainder of a contract, therefore "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."  *Rent-a-Center, West Inc.*, 130 S.Ct. at 2778.[4]

Here, Plaintiff does not appear to be challenging the specific arbitration provision of the CSA as fraudulent; rather, Plaintiff's claim of fraud/fraud in the inducement attacks the validity of the CSA as a whole.  *See* Compl. ¶69 (alleging that Plaintif "was fraudulently induced by Insperity

---

[4] The Supreme Court reaffirmed this distinction in *Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. ___, 4 (2012) (per curiam), holding that, "when parties commit to arbitrate contractual disputes, it is a mainstay of the Act's substantive law that attacks on the validity of the arbitration clause itself are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.").

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

to enter into the CSA, and therefore, *the CSA should be rescinded* and all payments by Plaintiff to Insperity under the CSA should be returned to Plaintiff by way of restitution.") (emphasis added); *see also* Compl. ¶66 (attacking the validity of the CSA on the whole by alleging that "[t]he representations contained in the Insperity Advertising, collateral and sales pitches and in the CSA . . . are intended to defraud businesses into purchasing the PEO services . . . and entering into a CSA when Insperity is actually providing little more than a payroll service to its clients."'). Therefore, as with Plaintiff's other claims, Plaintiff's fraud-based claim must be reviewed by an arbitrator in the first instance.

In conclusion, because all of Plaintiff's claims arise out of or relate to the arbitrable CSA to which Plaintiff stipulated, the Court concludes that Plaintiff's claims must be submitted to arbitration with Insperity PEO.  However, because the parties contend in various sections of their motions that Insperity, Inc. is not a party to the CSA and cannot therefore enforce the arbitration agreement, the Court stays all claims against Insperity, Inc. pending arbitration of this case.  The Court finds this course of action appropriate as arbitration of any claims against Insperity, PEO are likely to predominate over any individual claims against Insperity, Inc., and Insperity PEO's defense of these claims may have a preclusive effect over identical claims raised against Insperity, Inc.  *See Moses H. Cone Memorial Hospital*, 460 U.S. at 21 n.23 ("In some cases. . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration.  That decision is one left to the district court . . . as a matter of its discretion to control its docket.").  Accordingly, the Court hereby GRANTS the Motion For Stay and to Compel Arbitration.

## IV.    MOTION TO DISMISS

Finally, Plaintiff seeks to dismiss two counterclaims raised by Insperity PEO in the Answer and First Amended Counterclaims, *see* ECF No. 15, arguing that they are procedurally improper and fail to state a claim for which relief can be granted.  ECF No. 25.  For reasons discussed below—as well as in Parts II and III of this Order—the Court DENIES Plaintiff's Motion to Dismiss.

**United States District Court**

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).   For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court need not accept as true allegations contradicted by judicially noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment.  *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Nor is the Court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.  Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B. Analysis

First, the Court denies Plaintiff's Motion to Dismiss Insperity PEO's counterclaims based on procedural defects.  In filing the First Amended Counterclaims, Insperity PEO stated that it was

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

"appear[ing] in this pleading *subject to* the Court's decision with respect to its motion to intervene in this case . . . ."  ECF No. 15 at 12 n.1 (emphasis added).  This Order grants Insperity PEO the right to intervene in this action pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.  *See supra* Part II.  Therefore, the counterclaims filed conditionally against Plaintiff are procedurally proper.[5]

Second, the Court denies Plaintiff's Motion to Dismiss based on allegations that Insperity PEO is not in privity of contract with Plaintiff.  For the reasons discussed in Part II and III of this Order, the Court finds that Administaff II and Insperity PEO are the same entity and, therefore, the CSA in which Plaintiff entered is still binding.

Finally, Plaintiff alleges for the first time in its reply in support of its Motion to Dismiss that Insperity PEO's counterclaims should be dismissed because the CSA has been terminated.  Reply at 5–6; *see* CSA Art. II (stating that the agreement "will remain in force until either Administaff or Client terminates that Agreement by giving thirty (30) days notice unless otherwise provided herein or agreed to in writing by Client and Administaff.").[6]  As Insperity PEO faxed a 30-day termination notice to Plaintiff on February 16, 2012, there is no question that the CSA is no longer in effect.  Compl. ¶ 49.

---

[5]  In addition, the Court is not persuaded by Plaintiff's argument that Defendant Insperity, Inc. should be compelled to respond to Plaintiff's Complaint or be subject to default.  Defendant Insperity, Inc. filed an answer to Plaintiff's Complaint and Counterclaim on July 30, 2012.  ECF No. 6.  Then, on August 16, 2012, Defendant filed its Answer to the Complaint and Intervening Plaintiff Insperity PEO Services, LP's First Amended Counterclaims and Application to Compel Arbitration.  ECF No. 15.  Insperity, Inc. contends—and the Court agrees—that both the original Answer and the Answer with the amended counterclaims are filed on behalf of Insperity, Inc.

[6]  When filing its reply, Plaintiff attached two exhibits setting forth new evidence in support of its Motion to Dismiss: (A) a copy of a letter from Plaintiff's counsel to opposing counsel requesting that Insperity PEO withdraw its pleadings, and (B) a copy of opposing counsel's response.  In light of the new exhibits that Plaintiff submitted in support of its reply, Intervenor Insperity PEO filed an objection pursuant to Civil Local Rule 7-3(d)(1) and a Motion for Leave to File Surreply.  ECF No. 30.  The Court GRANTS Insperity PEO's request to strike Plaintiff's attachments to the reply brief, as the Court finds that the new exhibits are irrelevant to Plaintiff's Motion to Dismiss.  Therefore, they are inadmissible pursuant to Rule 402 of the Federal Rules of Evidence.  Consequently, the Court DENIES Insperity PEO's Motion for Leave to File Surreply as moot.

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

1    However, termination of an agreement does not necessarily negate an arbitration agreement

2 if "the dispute is over an obligation arguably created by the expired contract." *Homestake Lead*

3 *Co. of Missouri v. Doe Run Resources Corp.*, 282 F.Supp.2d 1131, 1140 (N.D. Cal. 2003). Rather,

4 the Supreme Court has held that, "where the dispute is over a provision of the expired agreement,

5 the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde*

6 *Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977);

7 *see generally Litton Fin. Printing Div., Inc. v. NLRB*, 501 U.S. 190, 206 (1991) (noting that "[t]he

8 object of an arbitration clause is to implement a contract, not to transcend it . . . ." ).

9    Here, all of Plaintiff's claims relate to alleged pre-termination events and to alleged rights

10 that accrued prior to termination of the CSA. Therefore, the arbitration clause remains valid as

11 applied to Plaintiff's claims absent express negation or clear implication, which do not appear in

12 this Agreement. While the CSA mentions survivability after termination in only two sections of

13 the CSA, both of which apply to 401(k)-related issues, *see* CSA § 8.11 & Ex. F, the CSA nowhere

14 states that termination of the agreement necessarily terminates operation of the arbitration

15 agreement as well. Nor does the failure to discuss the survivability of the arbitration clause clearly

16 imply that its application to disputes "arising under or relating to" the contract fail to survive.

17 Indeed, this position would defeat the purpose of the broad arbitration clause adopted by the parties

18 in this case. Therefore, the Court does not find that Insperity PEO's counterclaims are improper

19 procedurally or implausible facially. The Court thus DENIES Plaintiff's Motion to Dismiss.

20 **V.    CONCLUSION**

21    Having considered the submissions of the parties and the relevant law, the Court finds that

22 the proper counter-party in this suit is Insperity PEO rather than Insperity, Inc. and that the CSA

23 includes a valid arbitration agreement that covers the dispute at issue in this case. Accordingly, the

24 Court GRANTS Insperity PEO's Motion to Intervene, GRANTS the Motion for Stay and to

25 Compel Arbitration, and DENIES Plaintiff's Motion to Dismiss the Counterclaim filed by Insperity

26 PEO.

27

28

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM

1    As this case will otherwise be stayed pending arbitration, the Court suggests that the parties

2    stipulate to a dismissal without prejudice and to a tolling agreement.  By December 10, 2012, the

3    parties shall file a stipulation of dismissal or, if they are unable to do so, file a statement informing

4    the Court why the stay should not be lifted.

5    **IT IS SO ORDERED.**

6

7    Dated: November 29, 2012

8    LUCY H. KOH
     United States District Judge

Case No.: 12-CV-03163-LHK
ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTION FOR STAY AND TO COMPEL
ARBITRATION; DENYING MOTION TO DISMISS COUNTERCLAIM